## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

**MARYLAND SHALL ISSUE, INC.**
for itself and its members,
1332 Cape St. Claire Rd #342
Annapolis, MD 21409

and

**PAUL MARK BROCKMAN**
6014 River Birch Ct
Hanover, MD 21076

and

**ROBERT and CAROLINE BRUNGER**
11281 Gunsmoke Ct.
Lusby, MD 20657

and

**DAVID ORLIN**
867 Caulford Drive
Westminster, MD 21157

and

All of the above Individually Named
Plaintiffs On Behalf of Themselves and
all Others Similarly Situated

*Plaintiffs,*

v.

**LAWRENCE HOGAN,**
in his capacity of
GOVERNOR OF MARYLAND
100 State Circle
Annapolis, MD 21401

*Defendant.*

CASE No._____
**\*JURY TRIAL DEMANDED\***

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs Maryland Shall Issue, Inc., Paul Mark Brockman, Robert and Caroline Brunger, and David Orlin, individually and on behalf of themselves and others similarly situated, by and through undersigned counsel, and hereby file suit against Governor Larry Hogan, Governor of the State of Maryland in his official capacity, and in support thereof, state as follows:

## INTRODUCTION

1.      Effective October 1, 2018, the Maryland General Assembly passed House Bill 1302 and defendant Hogan signed into law Senate Bill 707 (Chapter 252 of Maryland laws) ("SB 707" or "Senate Bill 707").  Senate Bill 707 now creates Section 4-305.1 of the Criminal Law Article of the Maryland Code to provide that, with specified exceptions, a person may not "transport" into Maryland or "manufacture, possess, sell, offer to sell, transfer, purchase, or receive a rapid fire trigger activator."  Senate Bill 707 defines "a rapid fire trigger activator" extremely broadly to include "any device, including a removable manual or power-driven activating device, constructed so that, when installed in or attached to a firearm the rate at which the trigger is activated increases; or the rate of fire increases."  A rapid fire trigger activator is further defined to include a "bump stock, trigger crank, hellfire trigger, binary trigger, burst trigger system, or a copy or a similar device, regardless of the producer or manufacturer."  A "rapid fire trigger activator" does not include "a semiautomatic replacement trigger that improves the performance and functionality over the stock trigger."

2.      The only exception to the total ban on "rapid fire trigger activators" is for "the possession" of a "rapid fire trigger activator" by a person who "(1) possessed the rapid fire trigger activator before October 1, 2018; (2) applied to the federal Bureau of Alcohol, Tobacco,

Firearms and Explosives ["BATF"] before October 1, 2018 for authorization to possess a rapid

fire trigger activator; (3) received authorization to possess a rapid fire trigger activator from the

federal Bureau of Alcohol, Tobacco, Firearms and Explosives before October 1, 2019; and (4) is

in compliance with all federal requirements for possession of a rapid fire trigger activator."  This

exception for BATF authorization applies by its terms only to "possession."  It does not apply to

permit the manufacture, the sale, or the offer to sell, or the transfer or the receipt of a rapid fire

trigger activator otherwise prohibited by SB 707.  There is no provision anywhere in SB 707 for

just compensation being "first paid" to existing owners of "rapid fire trigger activators" for the

seizure and dispossession of their property rights in such "rapid fire trigger activators."  A person

who violates Section 4-305.1 newly enacted by SB 707 "is guilty of a misdemeanor and subject

to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both" under MD Code

Criminal Law § 4-306.

  3.  This class action lawsuit challenges the newly enacted SB 707 on five grounds.

First, by prohibiting the continued possession of or the exercise of other property rights in

existing "rapid fire trigger activators" by Plaintiffs and class members without any compensation

or authorization of any compensation, SB 707 facially violates the Takings Clause of the Fifth

Amendment to the United States Constitution.  Second, and independently, by prohibiting the

continued possession of existing "rapid fire trigger activators" by Plaintiffs and class members

and further prohibiting the sale, the offering for sale, transfer or receipt of such existing "rapid

fire trigger activators" without any compensation or authorization of any compensation, SB 707

facially violates the Takings Clause of Article III, § 40, of the Maryland Constitution ("Takings

Clause of the Maryland Constitution").  Third, by authorizing continued possession of existing

"rapid fire trigger activators" after October 1, 2018, only where the owner has applied for

"authorization" from the BATF by October 1, 2018 and received such "authorization" from the BATF by October 1, 2019, SB 707 violates the Due Process Clause of the Fourteenth Amendment by imposing a condition with which it is legally impossible for Plaintiffs and class members to comply.  Under Maryland law, these BATF provisions of SB 707 are not severable from the rest of SB 707 and thus the entirety of SB 707 must be declared unconstitutional. Fourth, in banning "any device" that increases "the rate of fire" by any amount, and in failing to define "installed in or attached to a firearm," or a "binary trigger system or burst trigger system or a copy or a similar device," SB 707 is so vague that it does not provide "fair notice of the conduct" of the conduct it proscribes. These terms fail to "provide standards to govern the actions of police officers, prosecutors, juries, and judges" and thus will impermissibly lead to the risk of "arbitrary or discriminatory law enforcement" in violation of the Due Process Clause of the Fourteenth Amendment.  Fifth, by retroactively abolishing vested property rights of Plaintiffs and class members in presently owned "rapid fire trigger activators" Defendant has violated Article 24 of the Maryland Constitution.

4.     This suit is brought on behalf of MSI, its members and the individuals listed in the caption above, as well as the class of all similarly-situated individuals, in order to seek reasonable compensation for the losses incurred as well as injunctive and declaratory relief for the protection of Plaintiffs' and class members' State and Federal Constitutional rights.

**JURISDICTION AND VENUE**

5.     This action arises under the Constitution and laws of the United States. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the State claims alleged in this Complaint under 28 U.S.C. § 1367 as such claims form a part of the same case or controversy.

4

6.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C.

§§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the

general legal and equitable powers of this Court and by 42 U.S.C. § 1983.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the

events or omissions giving rise to Plaintiffs' claims occurred in this district.

### THE PARTIES

8.      Class Plaintiff Maryland Shall Issue, Inc. ("MSI") is a non-profit membership

organization incorporated under the laws of Maryland with its principal place of business in

Annapolis, Maryland. MSI has approximately 1,100 members statewide.  MSI is an all-

volunteer, non-partisan organization dedicated to the preservation and advancement of gun

owners' rights in Maryland. It seeks to educate the community about the right of self-protection,

the safe handling of firearms, and the responsibility that goes with carrying a firearm in public.

The purposes of MSI include promoting the exercise of the right to keep and bear arms; and

education, research, and legal action focusing on the Constitutional right to privately own,

possess and carry firearms and firearms accessories.  MSI brings this action on behalf of itself

and, separately, on behalf of its members.  SB 707 requirements directly harm MSI as an

organization by undermining its message and acting as an obstacle to the organization's

objectives and purposes.  The membership of MSI includes individuals who currently possess

"rapid fire trigger activators" which are effectively and totally banned by SB 707 as of October

1, 2018.  Neither the claims asserted nor the relief requested requires the participation of

individual MSI members in this lawsuit.  MSI is an appropriate class representative in this class

action.  MSI's membership include persons who, individually or collectively, currently possess

"devices" banned by SB 707, who are thus directly injured by SB 707 and who would have standing to bring each of the legal claims set forth herein.

9.     Class Plaintiff Paul Brockman is an adult citizen and resident of the state of Maryland.  At all times relevant hereto, Paul Brockman is an existing lawful owner of one or more of the "rapid fire trigger activators" newly banned by SB 707.  Paul Brockman is a member of MSI.

10.     Class Plaintiffs Robert and Caroline Brunger are husband and wife and are both adult citizens and residents of the state of Maryland.  At all times relevant hereto, Robert and Caroline Brunger are existing lawful owners of one or more of the "rapid fire trigger activators" newly banned by SB 707.  Robert and Caroline Brunger are members of MSI.

11.     Class Plaintiff David Orlin is an adult citizen and resident of the state of Maryland.  At all times relevant hereto, David Orlin is an existing lawful owner of one or more of the "rapid fire trigger activators" newly banned by SB 707.  David Orlin is a member of MSI.

12.     Class Plaintiffs identified individually herein bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and on behalf of the entire class of people similarly situated. The members of the class are so numerous that joinder of all members is impracticable and questions of law and factual circumstances are common to the class.  The representative parties herein present typical claims and defenses common to all members of the class, the class members will be fairly represented by the parties herein and class members' interests will therefore be adequately protected.

**FACTS**

13.     On April 24, 2018, defendant Governor Hogan signed into law Senate Bill 707, Chapter 252, with an effective date of October 1, 2018 ("Senate Bill 707" or ("SB 707").

14.     Senate Bill 707 created Section 4-305.1 of the Criminal Law Article of the Maryland Code to provide that, with specified exceptions, a person may not "transport" into Maryland or "manufacture, possess, sell, offer to sell, transfer, purchase, or receive a rapid fire trigger activator."

15.     Senate Bill 707 defines "a rapid fire trigger activator" to include "any device, including a removable manual or power-driven activating device, constructed so that, when installed in or attached to a firearm the rate at which the trigger is activated increases; or the rate of fire increases."  A rapid fire trigger activator is further defined to include a "bump stock, trigger crank, hellfire trigger, binary trigger, burst trigger system, or a copy or a similar device, regardless of the producer or manufacturer."  The term "installed in or attached to a firearm" is not defined within SB 707.  The term "rate of fire" is not defined within SB 707. The terms "binary trigger, burst trigger system, or a copy or a similar device" are not defined within SB 707.

16.     The term "firearm" is a broadly defined term under MD Code Public Safety § 5-101(h) to include "(i) a weapon that expels, is designed to expel, or may readily be converted to expel a projectile by the action of an explosive; or (ii) the frame or receiver of such a weapon." SB 707 imposes a ban on "any device" that increases the "rate of fire" when "installed in or attached to" any "firearm."  The terms "installed in or attached to" are not defined within SB 707. The term "firearm" in SB 707 can thus be read to include any "firearm" defined by MD Code Public Safety § 5-101(h).  The bans imposed by SB 707 are thus not limited to semi-automatic weapons but may also include revolvers and single-shot weapons.

17.    Under Senate Bill 707, a "rapid fire trigger activator" does not include "a semiautomatic replacement trigger that improves the performance and functionality over the stock trigger."

18.    There is no provision anywhere in Senate Bill 707 for just compensation being first paid to existing owners of "rapid fire trigger activators" for the dispossession of their property rights in existing "rapid fire trigger activators" owned prior to the enactment of SB 707.

19.    A person who violates MD Code Criminal Law § 4-305.1, as newly enacted by SB 707, "is guilty of a misdemeanor and subject to imprisonment not exceeding 3 years or a fine not exceeding $5,000 or both" under MD Code Criminal Law § 4-306.  A person convicted of a violation of MD Code Criminal Law § 4-306 is subject to a lifetime federal firearms disability under 18 U.S.C. 922(g)(1), and 18 U.S.C. 921(a)(20)(B), regardless of the actual sentence imposed. A similar lifetime firearms disability is imposed under Maryland law.

20.    Article III, Section 40 of the Maryland Constitution provides: "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

21.    "Section 40 has been determined to 'have the same meaning and effect in reference to an exaction of property, and that the decisions of the Supreme Court on the Fourteenth Amendment are practically direct authorities.'" *Litz v. Maryland Department of the Environment*, 446 Md. 254, 265-66, 131 A.3d 923, 930 (2016).

22.    The Takings Clause of the Fifth Amendment to the United States Constitution provides, in relevant part: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., Amdt. 5.  The Takings Clause of the Fifth Amendment has been

incorporated into the Fourteenth Amendment so as to be made fully applicable to the States,

including Maryland. *Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994), citing *Chicago, B. &*

*Q.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897).

23.     A "taking" under the Fifth Amendment and under Article III, § 40 of the

Maryland Constitution occurs "[w]henever a property owner is deprived of the beneficial use of

his property or restraints are imposed that materially affect the property's value, without legal

process or compensation." *Serio v. Baltimore County,* 384 Md. 373, 399, 863 A.2d 952, 967

(2004).

24.     The term "property" for purposes of Article III, § 40 of the Maryland Constitution

includes "every interest or estate which the law regards of sufficient value for judicial

recognition." *Dodds v. Shamer*, 339 Md. 540, 548, 663 A.2d 1318, 1322 (1995). Similarly, the

word "property" in the Takings Clause of the Fifth Amendment means "the group of rights

inhering in [a] citizen's relation to [a] ... thing, as the right to possess, use and dispose of it."

*United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945). "Whenever a property owner

is deprived of the beneficial use of his property or restraints are imposed that materially affect

the property's value, without legal process or compensation, the owner is deprived of his

property within the meaning of Article III, Section 40." *Serio v. Baltimore County*, 384 MD.

373, 398, 863 A.2d 952, 967 (2004).  The term "property" under both the Maryland Takings

Clause and the Fifth Amendment's Takings Clause includes both real property and personal

property.  *Horne v. Dept. of Agriculture*, 135 S.Ct. 2419, 2427-28 (2015); *Serio v. Baltimore*

*County*, 384 Md. 373, 399, 863 A.2d 952, 967 (2004).

25.     Takings in bills passed by the Maryland General Assembly are unconstitutional if

the bills do not include a "provision" for compensation "being first paid."  *Steuart v. City of*

*Baltimore,* 7 Md. 500 (1855) ("the Legislature may pass a law taking private property for public uses, if provision be made for compensation first to be paid or tendered to the owner").  "A statute having the effect of abrogating a vested property right, and not providing for compensation, does 'authoriz[e] private property, to be taken ..., without just compensation' (Article III, § 40)."  *Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 630, 805 A.2d 1061, 1076 (2002). A failure to enact such a provision or to make a tendering of compensation renders the entire bill unconstitutional and void.

26.     SB 707 does not include any "provision" providing for "compensation first to be paid or tendered" within the meaning of the Takings Clause of the Maryland Constitution for the abrogation of Plaintiffs' vested property rights in their previously owned "rapid fire trigger activators" newly banned in SB 707.

27.     "Rapid fire trigger activators," as defined in SB 707, are property covered and protected by the Takings Clause of the Fifth Amendment and the Takings Clause of the Maryland Constitution.  By banning possession as well as other as all other property rights associated with continued ownership of this personal property in Maryland, SB 707 deprives existing owners of "rapid fire trigger activators" of all beneficial uses of their previously owned "rapid fire trigger activators."

28.     SB 707 makes an exception on its general ban on possession of a "rapid fire trigger activator" after October 1, 2018, if  "the possession" of a "rapid fire trigger activator" is by a person who "(1) possessed the rapid fire trigger activator before October 1, 2018; (2) applied to the federal Bureau of Alcohol, Tobacco, Firearms and Explosives before October 1, 2018 for authorization to possess a rapid fire trigger activator; (3) received authorization to possess a rapid fire trigger activator from the federal Bureau of Alcohol, Tobacco, Firearms and

Explosives before October 1, 2019; and (4) is in compliance with all federal requirements for possession of a rapid fire trigger activator."  These provisions of SB 707 ("BATF provisions") were intended to allow persons who owned or possessed "rapid fire trigger activators" as of October 1, 2018, to continue to maintain lawful possession of these devices by obtaining BATF authorization.

29.    A statute that bans continued possession of personal property in which the owner has a vested interest is a *per se* Taking under the Takings Clause of the Fifth Amendment and the Takings Clause of the Maryland Constitution, regardless of whether physical possession of the property is actually assumed by the government.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 324 n.19 (2002) (a physical taking "dispossess[es] the owner" of property); *Nixon v. United States*, 978 F.2d 1269, 1287 (D.C. Cir. 1992) (statute that "physically dispossessed" property owner "resulted in" a *per se* taking).

30.    Under the Takings Clause of the Fifth Amendment and the Takings Clause of the Maryland Constitution, the State of Maryland may not abrogate vested rights in private property without compensation, even in the exercise of its otherwise valid police powers.  *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1026 (1992) ("the legislature's recitation of a noxious-use justification cannot be the basis for departing from our categorical rule that total regulatory takings must be compensated. If it were, departure would virtually always be allowed"); *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 425 (1982) (accepting the lower court's holding that the regulation at issue was "within the State's police power," but holding that "[i]t  is a separate question, however, whether an otherwise valid regulation so frustrates property rights that compensation must be paid").

31.     After the enactment of SB 707, persons in Maryland, including members of Plaintiff MSI, have applied to the BATF for "authorization to possess a rapid fire trigger activator."  In response to these requests, the BATF refused to accept or process the application for authorization, informing the applicant that:

> Maryland residents who intend to file applications with ATF for "authorization" to possess devices covered by the referenced Maryland statute should be aware that ATF is without legal authority to accept and process such an application.  Consequently, ATF respectfully requests that Maryland residents not file applications or other requests for "authorization" from ATF to possess rapid fire trigger activators as defined in the State statute.  Any such applications or requests will be returned to the applicant without action.  ATF regrets any confusion and inconvenience caused by the provisions of the Maryland statute that mistakenly indicate ATF has the authority to approve possession of devices covered by the statute.

The accuracy of this communication was confirmed by correspondence between the President of MSI and Kyle Lallensack, Chief, Firearms Industry Programs Branch, Firearms and Explosives Industry Division, Bureau of Alcohol, Tobacco, Firearms, and Explosives

32.     Dated April 24, 2018, the BATF issued a "Special Advisory," on its Internet website specifically in reference to SB 707, stating, in relevant part:

> **Maryland residents who intend to file applications with ATF for "authorization" to possess devices covered by the statute should be aware that ATF is without legal authority to accept and process such an application.  Consequently, ATF respectfully requests that Maryland residents not file applications or other requests for "authorization"  from ATF to possess rapid fire trigger activators as defined in**

**the State statute.  Any such  applications or requests will be returned to the**

**applicant without action**.  ATF regrets any confusion and inconvenience caused by the

provisions of the Maryland statute that mistakenly indicate ATF has the authority to

approve possession of devices covered by the statute.

https://www.atf.gov/news/pr/maryland-law-restricting-rapid-fire-trigger-activators (bold in

original).  In light of this stated public policy of the BATF, any further applications for

"authorization" under the BATF provisions of SB 707 would be futile.

33.     In enacting SB 707, the Maryland General Assembly intended to exempt from the

ban on possession otherwise imposed by SB 707 if persons who owned rapid fire trigger

activators prior to October 1, 2018, (1) filed an application for authorization to possess with the

BATF prior to October 1, 2018, and (2) obtained "authorization" from the BATF for the

continued possession of a "rapid fire trigger activator" by October 1, 2019.

34.     In light of the BATF's position that it lacks authority to accept or process any

applications for "authorization" for possession of "rapid fire trigger activators" within the

meaning of SB 707, it is legally impossible for existing owners, including the individual

Plaintiffs in this lawsuit, other members of Plaintiff MSI and class members, to comply with the

BATF provisions of SB 707 and obtain "authorization" from the BATF so as to preserve

continued possession of their "rapid fire trigger activators" owned prior to the enactment of SB

707.

35.     The legal impossibility of obtaining "authorization" for the continued possession

of "rapid fire trigger activators" means that the BATF provisions of SB 707 are contrary to the

Due Process Clause of the Fourteenth Amendment and are thus unenforceable. 1 W. Lafave & A.

Scott, Jr., Substantive Criminal Law § 3.3(c) at 291 (1986) ("[O]ne cannot be criminally liable

for failing to do an act which he is physically incapable of performing."). See also *Broderick v. Rosner*, 294 U.S. 629, 639 (1935) (Brandeis, J.) (invalidating a statute, in part, because it "imposes a condition which, as here applied, is legally impossible of fulfillment"); *Ezell v. City of Chicago*, 651 F.3d 684, 710-11 (7th Cir. 2011) (invalidating a requirement that that Chicago had made legally impossible to satisfy within the city); *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1530 (11th Cir. 1996) ('The law does not compel the doing of impossibilities."); BLACK'S LAW DICTIONARY 912 (6th ed. 1990) (same). Cf. *United States v. Dalton*, 960 F.2d 121, 126 (10th Cir. 1992) (reversing a conviction for failing to register a machinegun with the BATF where the court concluded that such registration was made legally impossible by a subsequent statute). The BATF provisions of SB 707 thus place an unconstitutional prior condition on the continued possession of existing "rapid fire trigger activators."

36.    Under Maryland law, a statute is presumed to have a severability clause by operation of law. MD Code, General Provisions, § 1-210. However, "when a statute contains both a general provision and an invalid exception, courts have often refused to sever when the severed statute would impose a duty, sanction or substantial hardship on the otherwise excepted class." *O. C. Taxpayers For Equal Rights, Inc. v. Mayor and City Council of Ocean City*, 280 Md. 585, 601, 375 A.2d 541, 550 (1977). "A long established principle of statutory construction in determining severability questions, is that where the Legislature enacts a prohibition with an excepted class, and a court finds that the classification is constitutionally infirm, the court will ordinarily not presume that the Legislature would have enacted the prohibition without the exception, thereby extending the prohibition to a class of persons whom the Legislature clearly intended should not be reached." *State v. Schuller*, 280 Md. 305, 319, 372 A.2d 1076, 1083 (1977).

37.     Invalidation of the unconstitutional BATF provisions in SB 707 would impose "a duty, sanction or substantial hardship" on persons who have or otherwise would have applied to the BATF for authorization under the BATF provisions of SB 707 as part of the excepted class created by the BATF provisions as it would impose the ban on continued possession of "rapid fire trigger activators" on such persons.

38.     The invalid, unconstitutional BATF provisions of SB 707 are not severable from the remainder of SB 707.  Invalidation of the BATF provisions thus renders invalid the entirety of SB 707 under Maryland law.

## THE CLASS

39.     Plaintiffs bring each claim set forth in this Complaint as a class action lawsuit under Rule 23 of the Federal Rules of Civil Procedure.  MSI is the named class representative and has associational standing to represent its members who are class members.  MSI members include individuals who are class members, as defined below.  A class action is appropriate under Rule 23(b)(1), (b)(2) and/or (b)(3).

40.     The members of the Plaintiff class are so numerous that their joinder is impracticable.  The prosecution of separate actions by the class members would create a risk of inconsistent adjudications with respect to the constitutional rights of members of the class.  Such inconsistent adjudications could impede or substantially impair the ability of non-joined members to protect their interests and rights. The class and subclasses include individuals who are presently known to the class representative as well as potentially many individuals who may prefer to remain unidentified.  The total number of class and subclass members is thus numerous but unknowable.

41.    Plaintiffs seek to certify the following class and sub-classes (referred to throughout collectively as the "class"), defined as:

**CLASS:** All persons in Maryland who may own or possess prior to October 1, 2018, any "device" that is or could be banned by SB 707.

**SUB-CLASS A:**  All persons in Maryland who may own or possess prior to October 1, 2018, any "bump stock, trigger crank, Hellfire trigger, binary trigger system or burst trigger system" banned by SB 707.

**SUB-CLASS B:** All persons in Maryland who lack "fair notice" of the types of "devices" that are banned by SB 707 because of the vagueness of SB 707 and thus may be at risk of arbitrary or discriminatory enforcement of SB 707 with respect to the "devices" that these persons may possess currently or in the future.

42.    To the extent revealed by discovery and investigation, there may be additional appropriate classes and/or subclasses.

43.    Excluded from the class are any local, state, or federal government entities.

44.    This Court may maintain these claims as a class action pursuant to Fed. R. Civ. P. 23.

45.    There are common questions of law and fact that affect the rights of every member of each respective class, and the types of relief sought are common to every member of each respective class.  The same conduct by the Defendant has injured every member of each respective class and each member of every class has been harmed in the same way.  Common questions of law and/or fact common to each respective class include, but are not limited to:

16

(a) Whether SB 707 represents an unlawful taking, thereby violating citizens' rights pursuant to the Takings Clause of the Fifth Amendment and the Takings Clause of the Maryland Constitution.

(b)  Whether SB 707 is void for vagueness in failing to lawfully define the term "installed in or attached to a firearm" or the term "rate of fire" or the terms "binary trigger, burst trigger system, or a copy or a similar device" as applied to "rapid fire trigger activator."

(c)  Whether SB 707 violates the Due Process Clause of the Fourteenth Amendment by conditioning continued lawful possession of "devices" otherwise banned by SB 707 upon compliance with the BATF provisions where such compliance with the BATF provisions is legally impossible.

46.     Concentrating the litigation in this forum is logical and desirable as the jurisdiction of this Court includes all of Maryland, the plaintiffs are Maryland residents, the Defendant is the Governor of Maryland sued in his *ex officio* capacity, and the suit challenges a Maryland state-wide statute.  Inconsistent or varying adjudications of claims of individual subclass members would establish incompatible standards of conduct for the Defendant in the enforcement or application of SB 707.

47.     The Defendant has acted or refused to act on grounds that apply generally to each subclass, so that final injunctive or declaratory relief is appropriate respecting each subclass as a whole.

**WHEREFORE**, Plaintiffs respectfully request that this Court certify each of the claims alleged in this case as a class action under Rule 23(b)(1), (b)(2) and (b)(3), Federal Rules of Civil Procedure, consisting of all persons in Maryland may own or possess prior to October 1, 2018, any "device" that is or could be covered by SB 707 and of all persons defined in the class and

sub-classes herein.  Plaintiffs further respectfully request that this Court divide the aforementioned class into subclasses as detailed in paragraph 41 above, designate plaintiff MSI as class and subclasses representative, and appoint undersigned counsel as counsel for the class and subclasses.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF THE TAKINGS CLAUSE OF THE FIFTH AMENDMENT

48.     Plaintiffs adopt and incorporate by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth..

49.     SB 707 constitutes a *per se* Taking of Plaintiffs' vested interests in personal property in violation of the Takings Clause of the Fifth Amendment.

50.     As a direct and proximate result of Defendant's violation of the Takings Clause of the Fifth Amendment, the Plaintiffs and the class have suffered irreparable harm, including the loss of property and of constitutional rights entitling them to declaratory and injunctive relief, as well as compensatory damages under 42 U.S.C. § 1983.

**WHEREFORE,** Plaintiffs and the class members demand judgment against Defendant, in an amount to be determined at trial, plus interest, costs and attorneys' fees and such other and further relief as the nature of the case requires, including, but not limited to, declaratory relief that SB 707 violates the Takings Clause of the Fifth Amendment.  Plaintiffs and the class members further demand temporary, preliminary, and permanent injunctive relief barring the Defendant from "Taking" Plaintiffs' and class members' personal property without just compensation. Plaintiffs and the class further seek monetary damages commensurate with the fair market value or purchase price of the devices banned by SB 707.

18

## COUNT II

## VIOLATION OF THE TAKINGS CLAUSE OF THE MARYLAND CONSTITUTION

51.     Plaintiffs adopt and incorporate by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

52.     SB 707 is a *per se* "Taking" of Plaintiffs' and class members' vested interests in vested personal property in violation of the Takings Clause of the Maryland Constitution.

53.     As a direct and proximate result of Defendant's violation of the Takings Clause of the Maryland Constitution, the Plaintiffs and class members have suffered irreparable harm, including the loss of constitutional rights entitling them to declaratory and injunctive relief, as well as compensatory damages.

**WHEREFORE,** Plaintiffs and the class members demand judgment against Defendant, in an amount to be determined at trial, plus interest, costs and attorneys' fees and such other and further relief as the nature of the case requires, including, but not limited to, declaratory relief that SB 707 violates the Takings Clause of the Maryland Constitution.  Plaintiffs and the class members further demand temporary, preliminary, and permanent injunctive relief barring the Defendant from "Taking" Plaintiffs' personal property without just compensation.  Plaintiffs and the class members further seek monetary damages commensurate with the fair market value or purchase price of the devices banned by SB 707.

## COUNT III

## THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

54.     Plaintiffs adopt and incorporate by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

55.     The BAFT provisions of SB 707 are legally impossible to comply with and are thus a violation of the Due Process Clause of the Fourteenth Amendment.

56.     The BATF provisions are not severable from the rest of SB 707, thus rendering the remainder of SB 707 likewise invalid.

57.     Defendant, acting under the color of state law, violated Plaintiffs' rights and the rights of class members under the Due Process Clause of Fourteenth Amendment by imposing legally impossible conditions precedent to continued lawful possession of "rapid fire trigger activators."

58.     As a direct and proximate result of Defendant's violation of the Due Process Clause of the Fourteenth Amendment, the Plaintiffs and members of the class have suffered irreparable harm, including the loss of constitutional rights entitling them to declaratory and injunctive relief, as well as compensatory damages under 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs and the class demand judgment against Defendant in an amount to be determined at trial, including monetary damages commensurate with the fair market value or purchase price of the devices banned by SB 707, plus interest, costs and attorneys' fees, and such other and further relief as the nature of the case requires, including, but not limited to, declaratory relief that the BATF provisions of SB 707 violate the Due Process Clause of the Fourteenth Amendment, that the BATF provisions of SB 707 are not severable from the remainder of SB 707 and that, accordingly, all of SB 707 is invalid.  Plaintiffs and the class further demand temporary, preliminary and permanent injunctive relief barring the Defendant from applying or enforcing SB 707 in any manner.

## COUNT IV

## THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

59.     Plaintiffs adopt and incorporate by reference each and every allegation contained elsewhere herein verbatim with the same effect as if herein fully set forth.

60.     The Due Process Clause of the Fourteen Amendment prohibits a legislature from enacting a vague criminal provision.  "'The prohibition of vagueness in criminal statutes,' our decision in *Johnson* explained, is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" *Sessions v. Dimaya,* 138 S.Ct. 1204, 1212 (2018), quoting *Johnson v. United States*, 135 S.Ct. 2551, 2557 (2015).  Accordingly, "[t]he void-for-vagueness doctrine, as we have called it, guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Dimaya*, 138 S.Ct. at 1212.  The doctrine "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges."  (Id.).

61.     The definition set forth in Senate Bill 707 for a "a rapid fire trigger activator" as including "any device, including a removable manual or power-driven activating device, constructed so that, when installed in or attached to a firearm the rate at which the trigger is activated increases; **or the rate of fire increases**" can be read to include any device (other than replacement triggers specifically exempted by SB 707), that could possibly result in an "increase" in a "rate of fire" no matter how minimal that increase may be.

62.     By thus specifically banning "any device" that could, by any amount, result in an increase of a "rate of fire," SB 707 could be read to apply to muzzle weights, a variety of muzzle devices which reduce or redirect flash, certain fore grips, certain sights, certain stocks (recoil reducing stocks) and a variety of recoil-reducing devices, all of which are designed to and do

increase, by some small measure, the effective "rate of fire" in the sense that they allow for faster, controlled follow-up shots.  Such devices are typically "installed in or attached to a firearm" within the meaning of SB 707.  All such devices are used for legitimate, law abiding purposes.

63.     Because the SB 707's ban on "any device" that could increase the "rate of fire" is not limited to semi-automatic firearms, this language could further be read to include revolver speed loaders, revolver speed strips and revolver moon clips, all of which permit a user to more rapidly reload a revolver and thus potentially increase the "rate of fire" of the revolver.  Such speed loaders, speed strips and moon clips can be said to at least temporarily be "installed in or attached to" a revolver when in normal use.  All such devices are used for legitimate law-abiding purposes. The term "installed in or attached to a firearm" is not a defined term.

64.     None of these foregoing devices are attached to or serve to operate the trigger at any increased rate.  None of these devices are in anyway akin to, or function like, a "bump stock, trigger crank, Hellfire trigger, binary trigger system or burst trigger system" otherwise identified and banned by SB 707.

65.     While SB 707 purports to define a "bump stock" and a "Hellfire trigger," and a "trigger crank," SB 707 also bans a "binary trigger system or burst trigger system or a copy or a similar device" and those terms are entirely undefined.  Such undefined "similar devices" may or may not include a "semiautomatic replacement trigger that improves the performance and functionality over the stock trigger" that is otherwise expressly exempt from the ban created by SB 707.

66.     In banning "any device" that increases "the rate of fire" by any amount, and in failing to define "rate of fire," "installed in or attached to a firearm" and a "binary trigger system

or burst trigger system or a copy or a similar device," SB 707 is so vague that it does not provide

"fair notice of the conduct" it proscribes. These terms fail to provide "provide standards to

govern the actions of police officers, prosecutors, juries, and judges" and thus will impermissibly

lead to the risk of "arbitrary or discriminatory law enforcement" in violation of the Due Process

Clause of the Fourteenth Amendment.

**WHEREFORE,** Plaintiffs and the class demand judgment against Defendant in an

amount to be determined at trial, including monetary damages commensurate with the fair

market value or purchase price of the devices banned by SB 707, plus interest, costs and

attorneys' fees, and such other and further relief as the nature of the case requires, including, but

not limited to declaratory relief that SB 707 is unconstitutionally vague in violation of the Due

Process Clause of the Fourteenth Amendment.  Plaintiffs and the class further demand

temporary, preliminary and permanent injunctive relief barring the Defendant from applying or

enforcing SB 707's ban on "any device" that increases "the rate of fire"… "when installed in or

attached to a firearm."

## COUNT V

## <u>VIOLATION OF ARTICLE 24 OF THE MARYLAND CONSTITUTION</u>

67.    Plaintiffs adopt and incorporate by reference each and every allegation contained

elsewhere herein verbatim with the same effect as if herein fully set forth.

68.    The existing owners of "rapid fire trigger activators" have a vested property

interest in the possession of their devices which will be banned by SB 707, effective October 1,

2018.

69.    Article 24 of the Maryland Constitution provides that "[t]hat no man ought to be

taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or,

23

in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

70.     Under Maryland law, "[a] statute having the effect of abrogating a vested property right, and not providing for compensation, does 'authoriz[e] private property, to be taken ..., without just compensation' (Article III, § 40). Concomitantly, such a statute results in a person or entity being 'deprived of his ... property" contrary to 'the law of the land' (Article 24)." *Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 630, 805 A.2d 1061, 1076 (2002).

71.     "Retrospective statutes that abrogate vested rights are unconstitutional generally in Maryland." *Muskin v. State Dept. of Assessments and Taxation*, 422 Md. 544, 556, 30 A.3d 962, 969 (2011).  "While generally the Maryland Declaration of Rights and Constitution are read *in pari materia* with their federal constitutional counterparts, this Court made clear in *Dua* that, under some circumstances, Maryland law may impose greater limitations (or extend greater protection than those prescribed by the United States Constitution's analog provisions.)." *Muskin* 422 Md. at 566, 30 A.3d. at 968-69.  "It has been firmly settled by this Court's opinions that the Constitution of Maryland prohibits legislation which retroactively abrogates vested rights. No matter how 'rational' under particular circumstances, the State is constitutionally precluded from abolishing a vested property right or taking of a person's property and giving it to someone else." *Muskin*, 422 Md. at 566, 30 A.3d. at 968-69, quoting *Dua*, 370 Md. at 623, 805 A.2d at 1072.

72.     For purposes of Article 24, "retrospective statutes are those that 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Muskin*, 422 Md. at 557-58, 30 A.3d at 969 (citations omitted).  Retrospective statutes within the meaning of Article 24 are those "acts

which operate on transactions which have occurred or rights and obligations which existed

before passage of the act." *Langston v. Riffe,* 359 Md. 396, 406, 754 A.2d 389, 394 (2000).

73.     SB 707 has the direct and intended effect of "abolishing" vested property interests

of Plaintiffs by banning the possession and other attributes of ownership associated with their

previously owned, existing "rapid fire trigger activators" without "providing for compensation."

Consequently, SB 707 deprive Plaintiffs and the members of MSI and members of the class of

their vested property interests contrary to the "law of the land" within the meaning of Article 24

of the Maryland Constitution.

74.     As a direct and proximate result of Defendant's violation of Article 24 of the

Maryland Constitution, the Plaintiffs and class members have suffered irreparable harm,

including the loss of constitutional rights, entitling them to declaratory and injunctive relief, as

well as compensatory damages.

**WHEREFORE**, Plaintiffs and the class demand judgment against Defendant in an

amount to be determined at trial, including monetary damages commensurate with fair market

value or purchase price of the devices newly banned by SB 707, plus interest, costs and

attorneys' fees, and such other and further relief as the nature of the case requires, including, but

not limited to declaratory relief that SB 707 violates Article 24 of the Maryland Constitution.

Plaintiffs and the class further demand temporary, preliminary and permanent injunctive relief

barring the Defendant from applying or enforcing SB 707 in any manner.

## JURY DEMAND

Plaintiffs and the class demand a jury trial as to all claims so triable.


Respectfully submitted,

HANSEL LAW, PC


_____/s/_____
Cary J. Hansel (Bar No. 14722)
Erienne A. Sutherell (Bar No. 20095)
2514 N. Charles Street
Baltimore, Maryland 21218
Phone:      301-461-1040
Facsimile: 443-451-8606

*Counsel for Plaintiffs and for the Class*